IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

BROOK ELLEN B.,

                Plaintiff,              Civil Action No.
                                                       6:19-CV-0721 (DEP)

   v.

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

DeSANTIS, DeSANTIS LAW FIRM      MICHAEL V. DeSANTIS, ESQ.
Attorneys at Law
286 Genesee Street
Utica, NY 13501

FOR DEFENDANT

HON. GRANT C. JAQUITH             DANIEL S. TARABELLI, ESQ.
United States Attorney                Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on August 12, 2020, during a telephone conference conducted on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)  Defendant's motion for judgment on the pleadings is GRANTED.

2)  The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   August 18, 2020
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BROOK ELLEN B.,

                              Plaintiff,

vs.                                         6:19-cv-721

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                              Defendant.

------------------------------------------------------------x
```

*DECISION* - August 12, 2020

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding

<u>APPEARANCES</u>  (by telephone)

```
For Plaintiff:    DeSANTIS, DeSANTIS LAW FIRM
                  Attorneys at Law
                  286 Genesee Street
                  Utica, NY 13501
                    BY:  MICHAEL V. DeSANTIS, ESQ.

For Defendant:    SOCIAL SECURITY ADMINISTRATION
                  Office of the General Counsel
                  15 Sudbury Street
                  Boston, MA 02203
                    BY:  DANIEL STICE TARABELLI, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1  THE COURT: Very good. I'll have to let that be
2 the last word. First, let me express my thanks to counsel
3 for excellent written and oral presentations. I found this
4 case to be interesting and enjoyed working on it.
5  Plaintiff has commenced this proceeding pursuant to
6 42, United States Code, Sections 405(g) and 1383(c)(3) to
7 challenge an adverse determination by the Commissioner of
8 Social Security finding that she was not disabled at the
9 relevant times and, therefore, ineligible for the benefits
10 which she sought.
11  The background is as follows. Plaintiff was born
12 in November of 1984. She's currently 35 years of age. She
13 was 27 years old at the alleged onset of her disability on
14 May 1, 2012. She stands somewhere between 5-foot 2-inches
15 and 5-foot 3-inches in height, and at various times has
16 weighed between 162 and 195 pounds. Plaintiff has a high
17 school diploma and an Associate's Degree in computer
18 networking. While she was in school she attended regular
19 classes.
20  Plaintiff lives in Rome in a duplex, Rome,
21 New York, that is, with her children who in November of 2017
22 were thirteen, ten and seven years of age. Plaintiff is a
23 widow. She has or had at the time of the hearing a
24 boyfriend. Plaintiff drives some, although she testified
25 that she is nervous when she drives because of limitations in

her right foot and ankle.

Plaintiff worked until May 1, 2012, in several positions. She was a sales associate and cashier at various locations, and between January 2004 and February of 2011 was a maid and caretaker, possibly for elderly patients.

Plaintiff suffered from severe foot burns in Detroit, Michigan, when she was scalded in the bathtub in 1985. She was eleven months of age at the time. She had several skin grafts to address her burns over the following two years. She suffers from lingering foot pain and has undergone several procedures, as counsel referenced.

In August of 2014, she underwent a percutaneous Achilles lengthening of her right leg from Dr. Alan Zonno with Upstate Orthopedics. That's at pages 488 and 489. On October 5, 2015, she underwent a left percutaneous Achilles lengthening by Dr. Scott VanValkenburg. The reference is 510 to 511. On February 20, 2017, she underwent two to five metatarsal osteotomies and paring of hyperkeratosis on the right foot. That was referenced at 716. On November 5, 2018, she underwent a fourth and fifth metatarsal resection on her right side. And that was referenced at page 44. She underwent some physical therapy but was discharged for noncompliance.

Plaintiff also suffers from plantar fasciitis; lung nodules; GERD, or Barrett's esophagitis; chronic migraines;

1  hip, knee, back and pelvic pain; bursitis; hypertension;
2  fibromyalgia; tarsal tunnel syndrome; and obesity.
3         Mentally, plaintiff has suffered from a general
4  anxiety disorder.  She has not been hospitalized.  She does
5  undergo therapy with a social worker every two weeks, but
6  there does not appear to be any records of that in the
7  Administrative Transcript.
8         Plaintiff has a fairly robust set of activities of
9  daily living.  She is able to dress, groom, shower, clean,
10 cook, wash dishes, shop, drive, care for her children, take
11 her children to the playground, travels to a friend's house,
12 watches television, listens to the radio, and reads.
13        Plaintiff has been prescribed many medications,
14 including Zofran for nausea; Xanax, which she takes daily;
15 Gabapentin, which she takes daily; Hydrocodone; Oxycodone;
16 Topamax; Seroquel; Omeprazole, or Prilosec; Cortisone
17 injections; acetaminophen; and Claritin.
18        Plaintiff is a smoker.  She smokes between one half
19 and one pack of cigarettes per day.  She has been urged on
20 many occasions by her medical providers to quit, including at
21 456, 474, 608, 625 and 687 of the Administrative Transcript.
22        Procedurally, plaintiff applied for Title II and
23 Title XVI benefits on August 17, 2015, alleging a disability
24 onset date of May 1, 2012.  She alleges at page 268
25 disability based on the following conditions:  Bilateral foot

1  and ankle burns, Achilles contracture, right hammertoe,
2  obesity, migraine headaches, bursitis, hypertension,
3  fibromyalgia, and Barrett's esophagitis.
4            A hearing was conducted on November 28, 2011 to
5  address plaintiff's applications for benefits by
6  Administrative Law Judge, or ALJ, David Pang.  ALJ Pang
7  issued an unfavorable decision on March 16, 2018.  That
8  decision became a final determination of the Agency when the
9  Social Security Administration Council on May 21, 2019 denied
10 plaintiff's application for review.  In doing so, the Appeals
11 Council opted not to exhibit additional documents submitted
12 by plaintiff's counsel.
13           This action was commenced on June 17, 2019 and is
14 timely.  In his decision, ALJ Pang applied the familiar
15 five-step test for determining disability.
16           At step one, ALJ Pang concluded plaintiff had not
17 engaged in substantial gainful activity since May 1, 2012.
18           At step two, he concluded that plaintiff does
19 suffer from severe impairments that imposed more than minimal
20 limitations on her ability to perform basic work functions,
21 including bilateral foot and ankle burns, Achilles
22 contracture, right hammertoe, obesity, migraine headaches,
23 bursitis, hypertension, fibromyalgia, and Barrett's
24 esophagus.
25           At step three, ALJ Pang concluded that none of

1  those conditions meets or equals any of the listed
2  presumptively disabling conditions set forth in the
3  Commissioner's regulations, specifically considering listings
4  1.08, 8.08, 1.02, and fibromyalgia pursuant to Social
5  Security Ruling 12-2p.  Also considered was listing 11.02
6  concerning migraines, and obesity was considered pursuant to
7  Social Security Ruling 02-1p.
8           Administrative Law Judge Pang next determined that
9  the claimant retains the residual functional capacity to
10 perform sedentary work with additional limitations set out at
11 page 91 of the Administrative Transcript, including:  The
12 claimant has no limitations in sitting; she can stand and
13 walk for one hour in a day; she can stand or walk for no more
14 than ten minutes at any one time; and she can never operate
15 foot controls with lower right extremity.  The claimant can
16 occasionally climb ramps and stairs, but never climb ladders,
17 ropes or scaffolds.  The claimant can occasionally balance,
18 stoop, kneel, crouch, and crawl.  The claimant can never
19 operate a motor vehicle in a work situation.
20          The Administrative Law Judge then concluded, based
21 on that residual functional capacity, at step four that
22 plaintiff is incapable of performing her past relevant work,
23 which would be with the assistance of a vocational expert
24 characterized as a cashier, a sales clerk, a
25 housekeeping/cleaner, and a home attendant.

1           At step five, again based on the testimony of a
2   vocational expert, Administrative Law Judge Pang concluded
3   that the claimant is capable of performing work in the
4   national economy, including as a final assembler, inspector,
5   and a table worker.  I note that ALJ Pang did conclude that
6   if the Medical-Vocational Guidelines applied and plaintiff
7   were capable of performing a full range of sedentary work,
8   Rule 201.28 of the grids would direct a finding of no
9   disability.
10          In this case, the Court's task is limited to
11  determine whether substantial evidence supports the
12  Administrative Law Judge's determination and whether correct
13  legal principles were applied.  The Second Circuit addressed
14  this standard in *Brault versus Social Security Administration*
15  *Commissioner*, reported at 683 F.3d 443.
16          First, it was noted, and it's well accepted, that
17  substantial evidence means such relevant evidence as a
18  reasonable mind might accept as adequate to support a
19  conclusion.  The Second Circuit noted that the substantial
20  evidence standard is extremely deferential and stringent,
21  more so than the clearly erroneous standard which we as
22  lawyers and jurists are familiar with.
23          Significantly, the Second Circuit noted that the
24  standard means once an ALJ finds a fact, that fact can be
25  rejected only if a reasonable factfinder would have to

1 conclude otherwise.  I note also, as the Commissioner has
2 pointed out, that the mere existence of evidence that would
3 counter the Administrative Law Judge's determination does not
4 necessarily mean that his determination is not supported by
5 substantial evidence.
6 　　　　　In this case plaintiff alleges two contentions,
7 both surrounding the step three determination of ALJ Pang.
8 She argues that her conditions meet or equal the listing
9 1.08; and secondly, that her condition meets or equals
10 listing 8.08.  I note that it is plaintiff's burden.  Under
11 *Poupore* through step four of the sequential determination,
12 plaintiff bears the burden.  When it comes to a listing, the
13 listing is met if all criteria of the listing are met.
14 　　　　　The issue in this case then is whether plaintiff
15 has proven that the ALJ's rejection of step three is not
16 supported by substantial evidence.  In making that analysis,
17 the Court may look to the entirety of the Administrative Law
18 Judge's decision.
19 　　　　　First, taking listing 8.08, that listing requires
20 the following:  "Burns with extensive skin lesions that have
21 lasted or can be expected to last for a continuous period of
22 at least twelve months."  So, there are three criteria that
23 must be met.  Burns obviously are met.  Extensive skin
24 lesions the Administrative Law Judge concluded was not met.
25 That fact was discussed at page 90 of the Administrative

1  Transcript.
2          A review of the Administrative Transcript supports
3  that determination.  There are many exams of the plaintiff
4  that found no lesions.  I found reference to no lesions at
5  pages 429, 432, 435, 437, 442, 444, 446 and 448 of the
6  Administrative Transcript.  I also found at least two
7  occasions when plaintiff denied the existence of any lesions,
8  at page 607 and 625.  I reject, respectively, plaintiff's
9  contention that any wound, including a burn and a skin graft,
10 can constitute a lesion.  So, I find that the rejection of
11 listing 8.08 is supported by substantial evidence.
12         Listing 1.08 presents a more interesting question.
13 That listing requires, "Soft tissue injury (e.g. burns) of an
14 upper or lower extremity, trunk, or face and head, under
15 continuing surgical management, as defined in 1.00M, directed
16 toward the salvage or restoration of major function, and such
17 major function was not restored or expected to be restored
18 within twelve months of onset."  It goes on to say that,
19 "Major function of the face and head is described in 1.00O."
20 Unfortunately, it does not have a similar definition of major
21 function with respect to the lower extremities.
22         The first element, of course, is under continuing
23 surgical management, as defined in 1.00M.  And that I would
24 agree with plaintiff probably is met in this case.
25         The second element is directed toward the salvage

or restoration of major function.  As the Commissioner's counsel has noted, that the courts have looked to other definitions to fill the void that exists when the listings don't define that term.  The case that was cited*, Murray versus Commissioner of Social Security,* 2014 WL 4199725, from the Eastern District of New York 2014, I found to be persuasive in that regard.

The function in this case is the ability to ambulate.  That is defined in Section 1.00B, as follows: "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the function of both upper extremities."  It goes on to state, "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes,

1   the inability to walk a block at a reasonable pace on rough
2   or uneven surfaces, the inability to use standard public
3   transportation, the inability to carry out routine ambulatory
4   activities, such as shopping and banking, and the inability
5   to climb a few steps at a reasonable pace with the use of a
6   single handrail.  The ability to walk independently about
7   one's home without use of assistive devices does not, in and
8   of itself, constitute effective ambulation."
9              In this case, I would note that the loss of
10  function or the lack of restoration of function must also
11  last more than twelve months.  There is no question that
12  plaintiff has undergone several surgical procedures, but it
13  appears very clear from the record, as the Administrative Law
14  Judge concluded at page 89, function was restored within
15  twelve months.
16             The record reflects she did very well in response
17  to surgery.  There are many reports of a normal gait from
18  12/23/14, at page 395; from August 28, 2015, at page 471,
19  plaintiff was doing well; on March 14, 2016, at 601,
20  plaintiff ambulates without difficulty; at page 691 from
21  October of 2016, gait normal; page 707, from, if I read my
22  writing correctly, May 9, 2017, normal gait.
23             So, the finding that there was no evidence of
24  extreme inability to ambulate for twelve consecutive months,
25  pivotal to the Administrative Law Judge's rejection of

1  listing 1.08, is supported by substantial evidence.  Also,
2  the Administrative Law Judge noted at page 95 that plaintiff
3  is able to carry out activities of daily living and with
4  normal ambulatory activity.
5          So, in conclusion, I find that the rejection of the
6  two listings cited and relied upon by the plaintiff at step
7  three are supported by substantial evidence.  The fact that
8  the plaintiff may be able to cite contrary evidence is not
9  sufficient to undermine a finding of substantial evidence
10 supporting the Administrative Law Judge's determination.
11         So, I will grant judgment on the pleadings to the
12 defendant and order dismissal of plaintiff's complaint.
13         Again, thank you both for the excellent
14 presentations.  I hope you stay safe during these challenging
15 times.
16                *               *              *
17
18
19
20
21
22
23
24
25

C E R T I F I C A T I O N

     I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter